# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-IA-00005-SCT

*EDDIE OAKS, BRENDA OAKS, OAKS
INSURANCE AGENCY, INC. AND DESOTO
INSURANCE, INC.*

*v.*

*DONALD E. SELLERS*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/12/2005 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | LARA A. COLEMAN |
| | DAVID A. BARFIELD |
| ATTORNEY FOR APPELLEE: | CHARLES ABBOTT |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND RENDERED - 04/12/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     This is an interlocutory appeal concerning whether the Circuit Court of DeSoto County erred by denying a motion for summary judgment. On January 13, 2003, Donald Sellers (Sellers) filed suit against DeSoto Insurance, Inc. (DeSoto Insurance), Eddie Oaks (Oaks), Brenda Oaks (Brenda), and Oaks Insurance Company (Oaks Insurance), collectively "the Defendants" in the Circuit Court of DeSoto County, Mississippi. Sellers alleged that

the Defendants, as his insurance agents, negligently breached the duties owed to him by failing to procure an umbrella insurance policy, for business and personal liability, in the amount of $1 million; and by negligently misrepresenting to Sellers that he had complete coverage including personal, umbrella liability coverage in the amount of $1 million. The Defendants filed a motion for summary judgment claiming that Sellers's claim was barred by the statute of limitations. The trial court conducted a hearing and later denied the Defendants' motion for summary judgment. Thereafter, the Defendants filed a petition for interlocutory appeal with this Court. On February 24, 2006, this Court granted the Defendants'petition for interlocutory appeal.

**FACTS**

¶2.    In July 1993, Sellers sought complete insurance coverage, including coverage for his unincorporated business, Donnie's Amoco, located in DeSoto County, Mississippi, from the Defendant's. Oaks and Brenda, agents for DeSoto Insurance, obtained a business liability policy for $1 million and an umbrella insurance policy for up to $1 million. The policies were issued and underwritten by American States Insurance Company (American States). The umbrella insurance policy provided coverage for business liability only and not personal liability. The same policy was renewed by payment of the premiums.

¶3.    On September 28, 1996, Eddie Sellers, Sellers's son, was involved in a motor vehicle collision in Tennessee while driving Sellers's car. Shane Thurman and his minor son, Dalton, were traveling in the vehicle with Eddie. As a result of this accident, Dalton was killed and Shane suffered serious injuries. Eddie was not working for his father at the time

2

of the accident. Sellers's insurance policy was in full force and effect on the date of the accident.

¶4.     Sellers notified the Defendants of the accident.  Sellers requested that the Defendants file a claim with American States under his umbrella policy.  The Defendants filed a loss notice and sent it to American States.  On August 26, 1997, American States sent Sellers written notice denying his claim on the basis that the umbrella policy did not provide coverage to Sellers's son since Eddie was not acting in the course and scope of Sellers's business at the time of the accident.

¶5.     Thereafter, Sellers and his son, Eddie, were named as party defendants in a Tennessee lawsuit concerning the collision.  Sellers's automobile insurance carrier, State Farm Insurance Company, defended him in the Tennessee action based on theories of imputed liability.  In January 2000, the Tennessee circuit court determined Eddie to be liable for the wrongful death of Dalton and the injuries suffered by Shane.  The Tennessee circuit court also determined that Sellers had no imputed liability under the business purpose doctrine or the Tennessee Family Purpose doctrine.

¶6.     The ruling of the Tennessee trial court was appealed.  On February 16, 2001, the Tennessee Court of Appeals handed down an opinion which affirmed the trial court ruling that there was no business purpose.  However, the Tennessee Court of Appeals reversed the trial court's ruling as to imputed liability.  The appellate court held that Sellers was personally liable for the injuries caused by his son's negligence pursuant to the Tennessee

3

Family Purpose doctrine. On October 8, 2001, the Tennessee Supreme Court denied certiorari, which made the Tennessee Court of Appeals's ruling final.

¶7. On January 13, 2003, following the denial of writ of certiorari, Sellers filed suit against the Defendants for failure to procure the requested insurance and failure to adequately explain the coverage. After the trial court denied the Defendants' motion for summary judgment on the basis of the statute of limitations, the Defendants filed their petition for interlocutory appeal. This Court granted interlocutory appeal and the Defendants now raise the following issue: whether the trial court erred by denying the Defendants' motion for summary judgment based on the expiration of the statute of limitations pursuant to Miss. Code Ann. § 15-1-49 (Rev. 2003).

## DISCUSSION

¶8. This Court applies a de novo standard of review on appeal from a grant of summary judgment by the trial court. *Russell v. Orr*, 700 So. 2d 619, 622 (Miss. 1997); *Richmond v. Benchmark Constr. Corp.*, 692 So. 2d 60, 61 (Miss. 1997); *Northern Elec. Co. v. Phillips*, 660 So. 2d 1278, 1281 (Miss. 1995). Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted by a court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law*. M.R.C.P. 56 (c) (emphasis added). The moving party has the burden of demonstrating that there is no genuine issue of material fact, while the non-moving party should be given the benefit of every reasonable doubt. *Tucker v. Hinds County*, 558

4

So. 2d 869, 872 (Miss. 1990). "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." *Id*. In *Simmons v. Thompson Mach. of Miss., Inc.*, 631 So. 2d 798, 801 (Miss.1994) (emphasis added)(citing *Shaw v. Burchfield*, 481 So. 2d 247, 252 (Miss. 1985)), this Court held:

> Of importance here is the language of the rule authorizing summary judgment 'where there is no genuine issue of *material* fact.' ***The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense . . . the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.***

The evidence must be viewed in the light most favorable to the non-moving party. *See Northern Electric Co.*, 660 So. 2d at 1281; *Russell*, 700 So. 2d at 622; *Richmond*, 692 So. 2d at 61; *Simmons,* 631 So. 2d at 802; *Tucker*, 558 So. 2d at 872.

¶9. To avoid summary judgment, the non-moving party must establish a genuine issue of material fact within the means allowable under the Rule. *Richmond*, 692 So. 2d at 61 (citing *Lyle v. Mladinich,* 584 So. 2d 397, 398 (Miss. 1991)). "If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise the decision is affirmed." *Richmond*, 692 So. 2d at 61.

¶10. The issue before this Court is whether Sellers is barred by the statue of limitations. There is no dispute between the parties that Miss. Code Ann. § 15-1-49 is applicable in this case. Miss. Code Ann. § 15-1-49(1) provides that "[a]ll actions for which no other period

of limitation is prescribed shall be **commenced within three (3) years next after the cause of such action accrued**, and not after." (Emphasis added).

¶11. The issue in this case arises from each party's interpretation of when the statute of limitations began to run. Sellers filed suit on January 13, 2003. The Defendants argue that the statute of limitations began to run on August 26, 1997, the date that American States denied Sellers's claim. According to the Defendants, Sellers's claim was filed more than five years after denial of the claim.

¶12. On the other hand, Sellers argues that the statute of limitations began to run on the date of *actual injury*. Sellers agues that the date of actual injury was February 16, 2001, when the Tennessee Court of Appeals imputed liability to Sellers. Therefore, Sellers contends that he filed within the statute of limitation, which was less than three years after the date of the Tennessee appellate decision.

¶13. The trial court and Sellers rely heavily on ***Owens-Illinois, Inc. v. Edwards***, 573 So. 2d 704, 706 (Miss. 1990), to support the proposition that Sellers had no actual damages and had not met the elements of a tort until the Tennessee court imposed liability on Sellers. Both the trial court and Sellers are correct that ***Owens-Illinois*** stands for the legal theory that "[a] cause of action accrues only when it comes into existence as an enforceable claim; that is, when the right to sue becomes vested," and the theory that an injury has to happen before a tort is considered to complete. ***Owens-Illinois***, 573 So. 2d at 706-707. However, ***Owens-Illinois*** was a personal injury case concerning products liability and negligence involving

6

latent disease issues. This Court in ***Owens-Illinois*** made clear that the issue of when a cause of action accrues was considered in the context of latent injury or disease. ***Id***. at 706.

¶14.    The Defendants argue that ***Young v. Southern Farm Bureau Life Insurance***, 592 So. 2d 103 (Miss. 1991), is applicable to this case. In ***Young***, the plaintiff sued Southern Farm Bureau on a bad faith claim for breach of contract. ***Young***, 592 So. 2d at 107. This Court considered when the action accrued for the insurance company's alleged wrongful refusal to pay life insurance benefits to Young. ***Id***. This Court held that the six-year statute of limitations pursuant to Miss. Code Ann. § 15-1-49, in effect at the time of the ***Young*** case, did not begin to run until Young received notification from Southern Farm Bureau denying payment of the accidental death benefits. ***Id***.

¶15.    We find that the trial court erred in its reliance on ***Owens-Illinois***. The trial court and Sellers couch the issue of the statute of limitations in terms of damage and injury accruing at the time the Tennessee court imposed liability on Sellers. The Defendants couch the issue of the statute of limitations in terms of damage and injury actually accruing when American States denied Sellers claim. As stated above, ***Owens-Illinois*** concerned the accrual of latent disease. In ***Young***, a bad faith case, this Court held that the statute of limitations began running on an insurance claim from the receipt of written notice denying the claim. ***Young***, 592 So. 2d at 107. This case concerns a misrepresentation of the policy terms and failure to inform Sellers of the policy terms.

¶16.    In ***Carter v. Citigroup, Inc.***, 938 So. 2d 809, 817 (Miss. 2006), this Court held that "there is a three-year statute of limitations for claims of breach of a fiduciary duty,

misrepresentation, and conspiracy." In *Carter*, this Court also analyzed *Andrus v. Ellis*, 887 So. 2d 175 (Miss. 2004), which addressed the issues of negligent misrepresentation and fraudulent misrepresentation and concealment. (Sellers made no claims for fraudulent misrepresentation or concealment in this case.) This Court held that the plaintiffs had notice of the terms of the contract and the credit insurance and the claims accrued at the time of the execution of the loan agreements. *Andrus*, 887 So. 2d at 180. This Court held:

> In *Andrus*, this Court addressed a claim against a lender for fraudulent and negligent misrepresentation and fraudulent inducement in the purchase of credit life, disability, and property insurance. *Andrus*, 887 So. 2d at 179. The Plaintiffs in Andrus alleged that they were either unaware that they purchased insurance, unaware that the insurance was not necessary, and the lender did not disclose the commission earned. *Id*. This Court found that the plaintiffs in Andrus were on notice of the terms of the contract and the credit insurance and all claims accrued at the time the loan agreements were executed. *Id*. at 180. In so far as the fraudulent concealment claim, the Court held that the Andrus plaintiffs had the documents in their possession and no one questioned any discrepancy between the document and their understanding of the document terms until filing suit. *Id*. at 181.

*Carter*, 938 So. 2d at 817.

¶17. In *Stephens v. Equitable Life Assur. Soc'y of the United States*, 850 So. 2d 78, 82 (Miss. 2003), this Court addressed the issue of knowledge of the content of insurance policies by holding:

> Furthermore, this Court has held that whether an insured reads the entire insurance policy, the "knowledge of its contents would be imputed to them as a matter of law." *Cherry v. Anthony*, 501 So. 2d 416, 419 (Miss. 1987) (citing *Atlas Roofing Mfg. Co., v. Robinson & Julienne, Inc*., 279 So. 2d 625, 629 (Miss. 1973)). This Court has held that:
>
> > [A] written contract cannot be varied by prior oral agreements. Moreover, as an evidentiary matter, parol evidence to vary the

8

terms of a written contract is inadmissible. Finally, a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract. ***Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.***, 584 So. 2d 1254, 1257 (Miss. 1991)(citations omitted).

Likewise, in ***Andrus v. Ellis***, 887 So. 2d 175, 180 (Miss. 2004), this Court held:

In Mississippi, a person is charged with knowing the contents of any document that he executes." ***Russell v. Performance Toyota, Inc***., 826 So. 2d 719, 725 (Miss. 2002) (citing ***J.R. Watkins Co. v. Runnels***, 252 Miss. 87, 172 So. 2d 567, 571 (1965) ("A person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him.")). "[A] person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." ***Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.***, 584 So. 2d 1254, 1257 (Miss. 1991). Accordingly, the Plaintiffs are charged with notice and therefore all claims accrued at the time the loan agreements were executed.

¶18.    Sellers purchased insurance from the Defendants in 1993. Sellers continued the policy and prior to the accident renewed the policy with an effective date of July 30, 1996. Sellers's insurance policies were clearly for business insurance only and not personal coverage. Oaks submitted a claim to American States, at Sellers's request, after the accident. The notice claim was a general liability notice of occurrence claim to American States. On August 26, 1997, Sellers received written notification from American States that his claim was denied because the accident did not occur within the course and scope of Sellers's business. After initiating suit against the Defendants claiming that the Defendants failed to procure the requested personal coverage, Sellers contradicted that claim in his response for requests for

9

admission admitting "[t]o the best of my knowledge, information and belief, I do not recall asking or consulting with any of the Defendants to quote personal lines coverage for me or my family from 1993 to the present."

¶19.    Neither party disputes that Sellers purchased insurance for his unincorporated business and an umbrella insurance policy for $1 million in 1993.  The record does not reveal whether Sellers received a copy of the policies.  However, Sellers's response to the Defendants' motion for summary judgment revealed that while Oaks did not recall specifically reviewing the policy with Sellers, citing to the passage of many years, his general practice was to go over policies with clients.  The record also does not contain a complete copy of the umbrella policy. However, the record does contain a copy of the declaration page of the policy.  The declaration page indicates that it is a renewal declaration and the policy period ran from July 30, 1996 to July 30, 1997.  There was no dispute that Sellers's insurance policy was in effect on the date of Eddie's accident.  The general liability claim form submitted to American States also indicated that Sellers had a policy with a July 30, 1996, effective date.

¶20.    Sellers sued Oaks, Brenda, Oaks Insurance, and DeSoto Insurance, not American States, in 2003.  However, Sellers bought the policy in 1993.  While the record is unclear whether Sellers received a copy of the policy, he renewed the policy in 1996.  Even giving Sellers the benefit of doubt that he never received a copy of his insurance policy, he knew at the latest on August 26, 1997, that his claim was denied by American States.  This notification made clear that either American States was mistaken in their denial of the claim or Sellers was mistaken in the type of coverage that the insurance policies provided to him.

10

¶21.    Thereafter, American States paid no insurance proceeds on Sellers's claim. American States's denial of coverage deprived Sellers of legal representation paid by American States. Sellers had to rely upon his automobile insurance company, State Farm, to provide assistance in the automobile accident lawsuit in Tennessee.  Sellers suffered damage when American States denied coverage that Sellers believed he was entitled to have and paid for via insurance premiums.  In addition, the denial of benefits by American States placed Sellers on notice that the Defendants did not procure the type of business and personal insurance that he believed he had purchased.  After American States denied coverage on August 26, 1997, Sellers had to face the wrongful death lawsuit without the possibility of any insurance coverage under the $1 million umbrella policy issued by American States.

¶22.    Sellers filed suit against the Defendants on January 13, 2003.  The filing occurred more five years after Sellers received the notice of denial of his claim on August 26, 1997. Clearly, Sellers filed his claim outside the three-year statute of limitations under Miss. Code Ann. § 15-1-49, and his claim is barred by the statute of limitations.

¶23.    In addition, Sellers's claim that the Defendants failed to adequately explain his coverage terms is also without merit.  Sellers made no claim for fraudulent concealment. Since the record is not clear when Sellers received a copy of the 1993 policy or the 1996 renewal, he was nevertheless placed on notice, at the very latest, by the denial of his claim in August 1997.  He did not claim that he never received the policy.  This Court has repeatedly held that the knowledge of an insurance policy is imputed to an insured regardless of whether

11

the insured read the policy. **Stephens**, 850 So. 2d at 82, *see also **Andrus***, 887 So. 2d at 180, **Toyota**, 826 So. 2d at 725.

¶24. Accordingly, we find that the trial court erred by denying the Defendants' motion for summary judgment. Giving Sellers all benefit of the doubt, he knew in August 1997 that his claim was denied, which placed him on notice of a possible problem with the procurement and understanding of the terms of his insurance policy. Sellers did not file his claim until more than five years later, and well outside the three-year statute of limitations under Miss. Code Ann. § 15-1-49. We find that Sellers's claims are barred by the statute of limitations.

## CONCLUSION

¶25. For the above reasons, we find that the three-year statute of limitations, pursuant to Miss. Code Ann. § 15-1-49, began to run at the latest on August 26, 1997, when Sellers received written notice that American States denied his insurance claim. Therefore, we find that the DeSoto County Circuit Court erred by denying the Defendants' motion for summary judgment. We now reverse the judgment of the Circuit Court of DeSoto County and render judgment to dismiss Sellers's claims against the Defendants, Eddie Oaks, Brenda Oaks, Oaks Insurance Agency, Inc., and DeSoto Insurance, Inc., as the claims are barred by the statute of limitations.

¶26. **REVERSED AND RENDERED**.

**SMITH, C.J., WALLER, P.J., DIAZ, CARLSON AND GRAVES, JJ., CONCUR. DICKINSON AND RANDOLPH, JJ., CONCUR IN PART AND IN RESULT. COBB, P.J., NOT PARTICIPATING.**